J-S70013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHEILA WEAVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS BREON, II | : | |
| | : | |
| Appellee | : | No. 781 MDA 2017 |

Appeal from the Order Entered March 30, 2015
In the Court of Common Pleas of Centre County
Civil Division at No(s): 13-0267

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED DECEMBER 14, 2017**

Appellant, Sheila Weaver ("Wife"), appeals from the order entered in the Centre County Court of Common Pleas, which required Thomas Breon, II ("Husband") to pay Wife a total of $148.31 for unreimbursed medical expenses, in this action for spousal support/alimony *pendente lite*. We affirm.

The relevant facts and procedural history of this case are as follows. The parties married on July 15, 1985, and separated on June 25, 2013. On July 10, 2013, Wife filed a complaint for spousal support/alimony *pendente lite*. The court held a support conference on August 21, 2013. By order dated August 21, 2013, and entered August 27, 2013, the court ordered Husband to pay Wife a total of $1,400.00 per month in support. The order contained the following provision regarding unreimbursed medical expenses:

> The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed

medical expenses incurred for each child and/or spouse as ordered herein. Unreimbursed medical expenses of the obligee or children that exceed $250 annually shall be allocated between the parties. The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received. The unreimbursed medical expenses are to be paid as follows: 76.00% by [Husband] and 24.00% by [Wife].

(Support Order, filed August 27, 2013, at 3; R.R. at 007). The effective date of the order is July 10, 2013. (**See id.** at 1; R.R. at 005).

On June 19, 2014, Wife filed a petition for contempt in the Centre County Court of Common Pleas, alleging Husband had failed to comply with the August 2013 support order. Specifically, Wife claimed she had sent Husband a letter on March 10, 2014, requesting payment for unreimbursed medical expenses Wife incurred in 2013 and 2014, and submitted documentation of those expenses. Wife sought payment of $18,201.04, the majority of which pertained to Wife's dental/orthodontic treatment. Wife claimed Husband refused to pay. Husband filed a motion to quash the petition on June 26, 2014. Following a hearing on August 8, 2014, the court granted Husband's motion to quash, directing Wife to file her petition in the Domestic Relations Section ("DRS").[1]

On August 25, 2014, Wife filed a "Petition for Enforcement of Support

_____

[1] The August 8, 2014 hearing transcript is not in the certified record.

- 2 -

Order and for Civil Contempt" in the DRS, claiming Husband failed to comply with the August 2013 support order.[2] Conference Officer Jeffrey Martin responded to Wife's petition by letter dated September 3, 2014, explaining Wife's petition would be forwarded to Enforcement Officer Timothy Weight to determine what, if any, further enforcement action would take place. The letter directed Wife to contact Mr. Weight for a status update regarding enforcement of Wife's claims. Mr. Martin's letter also included a copy of the DRS' policy on "Collection of Unreimbursed Medical Expenses." The policy states, in relevant part:

> It is the responsibility of the Plaintiff to utilize any and all forms of health insurance coverage or medical assistance to meet expenses before a bill is forwarded to the Defendant for payment. The bill submitted for payment of unreimbursed medical expenses should be forwarded to the other party within 30 days of being finalized with the medical provider or insurance company. In other words, when a client obtains the "bottom line" on what is owed in out-of-pocket expenses, (s)he has 30 days to submit that expense to the other party for payment. In return, the Defendant should remit payment directly to the Plaintiff within 30 days. Bills can be submitted to the Defendant via certified mail. All unreimbursed medical bills must be provided to the other party not later than March 31 of the year following the calendar year in which the final bill was received by the party seeking allocation. Any unreimbursed medical expense that is not resolved between the parties may be submitted to DRS only between **January 1st and May 31st** for the previous calendar year. Domestic

_____

[2] Meanwhile, Wife filed a petition to modify, seeking an increase in support. On September 10, 2014, the DRS entered a new support order, effective June 24, 2014, which reduced Husband's allocation for payment of unreimbursed medical expenses from 76% to 56%. Wife initially objected to the new support order, but she later withdrew those objections.

Relations is not responsible for sorting through bills and receipts, nor for tallying expenses; therefore, the official DRS medical bill submission form must accompany any documentation submitted for collection. A certified receipt confirming the expense was received in a timely manner by the Defendant can be submitted to the DRS with a copy of the unpaid bill(s). Proof of receipt must be submitted to the DRS in order for enforcement services to be provided. If a bill is not paid in the appropriate time period, the party who failed to make payment may be cited for Contempt of Court or the total amount owed may be added to the case balance with the arrears payment and wage attachment increased to pay on this expense. It is important to note that a possible consequence of a contempt citation is incarceration. Any expense submitted to the DRS **AFTER** May 31st for the previous calendar year, per Centre County Court of Common Pleas policy, will not be enforced by the DRS.

(Collection of Unreimbursed Medical Expenses Policy at 1; R.R. at 473) (emphasis in original). Husband subsequently objected to Wife's petition.

Enforcement Officer Mr. Weight investigated Wife's petition but was unable to resolve whether she was entitled to payment for the alleged unreimbursed medical expenses based on the documentation provided. Consequently, on October 23, 2014, the DRS filed a "contempt" petition[3] against Husband, requesting an evidentiary hearing before the court. The court scheduled a hearing for December 3, 2014, but ultimately relisted the

---

[3] According to Mr. Weight, the petition was not a true "contempt" petition but was the only available mechanism for the DRS to bring the parties' dispute before the court.

- 4 -

matter for February 3, 2015.[4]

The court held a hearing on February 3, 2015, at which Wife and Mr. Weight testified. Wife testified about the various unreimbursed medical expenses she incurred in 2013 and 2014, and produced documents of the medical bills she had received.[5] Mr. Weight testified he requested a hearing in this matter because he could not resolve whether Wife was entitled to payment for her alleged unreimbursed medical expenses. Mr. Weight explained that some of Wife's claims pre-dated the effective date of the support order, other claims did not include original bills or receipts, and he could not discern whether Wife met the $250.00 threshold for 2013 or 2014.

Following the hearing, the court requested submission of post-hearing briefs. Wife filed her post-hearing brief on February 19, 2015, and Husband filed his post-hearing brief on March 6, 2015. On March 30, 2015, the court entered an order requiring Husband to pay Wife a total of $148.31 for unreimbursed medical expenses Wife incurred in 2013. The court decided

---

[4] The record suggests the court held a brief hearing on or around December 3, 2014, but that hearing transcript is not in the certified record. According to Wife, the parties appeared before the court on that date, at which time a representative from the DRS advised the court the DRS would not enforce Wife's petition with respect to her 2013 unreimbursed medical expenses, pursuant to the DRS' policy that expenses submitted to the DRS after May 31st will not be enforced, and because Mr. Weight was unavailable to testify.

[5] Wife claimed in earlier proceedings that Husband was responsible for $18,201.04 in unreimbursed medical expenses, but Wife sought only $14,735.33 at the February 3, 2015 hearing.

Wife did not meet the eligibility threshold for the expenses she submitted for 2014.

Wife filed a notice of appeal on April 29, 2015, at docket No. 754 MDA 2015. On July 16, 2015, this Court issued a *per curiam* rule to show cause why the appeal should not be dismissed where no transcripts were prepared for the appeal because Wife did not properly serve the Court Reporter with the notice of appeal and request for transcript, per Pa.R.A.P. 1911(a), (d) (stating appellant shall request any required transcript and make necessary payment; appellate court may dismiss appeal if appellant fails to take action for preparation of transcript). That same date, this Court issued a separate rule to show cause why the appeal should not be quashed as interlocutory, due to the pendency of the parties' divorce proceedings. ***See generally Thomas v. Thomas***, 760 A.2d 397 (Pa.Super. 2000) (holding spousal support order entered during pendency of companion divorce action is interlocutory and not appealable until final disposition of divorce and all economic claims connected to divorce action). Wife did not respond to either rule to show cause. On September 22, 2015, this Court dismissed Wife's appeal by *per curiam* order, due to the pendency of the parties' divorce proceedings and Wife's failure to serve the Court Reporter with the notice of appeal and request for transcripts.

By order dated April 6, 2017 (with notice per Pa.R.C.P. 236 provided to Wife's counsel on April 10, 2017), the court entered a divorce decree, which

incorporated the parties' marital settlement agreement. Wife timely filed a notice of appeal at the current docket No. 781 MDA 2017, on May 10, 2017. On May 25, 2017, the court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife timely complied on June 5, 2017.[6]

Wife raises the following issues for our review:

> DID THE TRIAL COURT DIRECTLY OR INDIRECTLY THROUGH ITS DOMESTIC RELATIONS SECTION ABUSE ITS DISCRETION IN ADOPTING AND IMPLEMENTING A POLICY FOR THE ENFORCEMENT OF UNREIMBURSED MEDICAL EXPENSES THAT VIOLATES THE PLAIN LANGUAGE OF PA.R.CIV.P. [1910.16-6] ABDICATING ITS OBLIGATION TO ENFORCE THE REIMBURSEMENT OF ARREARAGES FOR MEDICAL EXPENSES DUE FROM SPOUSAL SUPPORT OBLIGORS?
>
> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [WIFE] REIMBURSEMENT FOR MEDICAL EXPENSES THAT IT ACKNOWLEDGED WERE MEDICALLY NECESSARY AND WHICH THE EVIDENCE SUBMITTED TO THE TRIAL COURT CONFIRMED [WIFE] WAS NOT REIMBURSED?

(Wife's Brief at 5).

Our standard and scope of review in this case are as follows:

---

[6] Following Wife's May 10, 2017 notice of appeal, this Court issued a *per curiam* rule to show cause why the appeal should not be quashed as interlocutory where it was unclear if the parties' divorce action was still pending. Wife responded to the rule, producing copies of the parties' divorce decree and marital settlement agreement. This Court subsequently discharged the rule to show cause and deferred the issue to the merits panel. As the parties' divorce proceedings are now complete, there are no jurisdictional impediments to our review. **See Thomas, supra**.

> [A]n appellate court's standard of review in cases involving support matters is whether the trial court abused its discretion. An abuse of discretion exists when the judgment of the trial court is manifestly unreasonable or is the result of prejudice, bias or ill-will. While it is not an appellate court's duty to create the record or assess credibility, we must nevertheless examine the existing record to ascertain whether sufficient facts are present to support the trial court's order. If sufficient evidence exists in the record to substantiate the trial court's action, and the trial court has properly applied accurate case law to the relevant facts, then we must affirm.

*Hibbitts v. Hibbitts*, 749 A.2d 975, 976-77 (Pa.Super. 2000) (internal citations omitted).

In her first issue, Wife argues the DRS' policy establishing May 31st as the deadline for bills to be submitted for enforcement purposes is inconsistent with Pa.R.C.P. 1910.16-6. Wife asserts the Rule plainly states that where the obligor has been provided notice of unreimbursed medical expenses before March 31st, then for purposes of subsequent enforcement, unreimbursed medical bills do not have to be submitted to the DRS prior to that date. Wife insists she timely provided notice of her unreimbursed medical expenses to Husband by letter dated March 10, 2014. When Husband failed to comply with her request for payment, Wife claims she filed her initial petition for contempt on June 19, 2014. Wife highlights that the DRS ultimately investigated her claim and filed its own contempt petition against Husband in October 2014. Wife contends she did not receive notice that the DRS was refusing to enforce her petition until the December 3, 2014 hearing, at which time a representative from the DRS took the position that Wife's medical

expenses for 2013 were unenforceable pursuant to the DRS' policy. Wife proclaims that the DRS' policy unfairly limited Wife's available options for seeking payment of her unreimbursed medical expenses. Wife concludes the DRS' policy on the collection of unreimbursed medical expenses is inconsistent with the Rules of Civil Procedure, and this Court must reverse the order on appeal and remand to the DRS to enforce Wife's petition in a manner consistent with the Rules of Civil Procedure. We disagree.

Preliminarily, "it is the responsibility of the [a]ppellant to supply this Court with a **complete** record for purposes of review." **Smith v. Smith**, 637 A.2d 622, 623 (Pa.Super. 1993), *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994) (emphasis in original). "[A] failure by an [a]ppellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue(s) sought to be examined." **Id.** at 623-24. **See also Kessler v. Broder**, 851 A.2d 944 (Pa.Super. 2004), *appeal denied*, 582 Pa. 676, 868 A.2d 1201 (2005) (reiterating appellant's responsibility to produce complete record for appeal).

Instantly, Wife initially sought reimbursement for medical expenses by filing a petition for contempt on June 19, 2014, in the Centre County Court of Common Pleas, alleging Husband had failed to comply with the August 2013 support order. Husband filed a motion to quash the petition on June 26, 2014. Following a hearing on August 8, 2014, the court granted Husband's motion, directing Wife to file her petition in the DRS. Notably, the August 8, 2014

hearing transcript is not in the certified record.

On August 25, 2014, Wife filed a "Petition for Enforcement of Support Order and for Civil Contempt" in the DRS. Conference Officer Jeffrey Martin responded to Wife's petition by letter, explaining Wife's petition would be forwarded to Enforcement Officer Timothy Weight to determine what, if any, further enforcement action would take place. The letter directed Wife to contact Mr. Weight for a status update regarding enforcement of Wife's petition. Mr. Martin's letter also included a copy of the DRS' policy on "Collection of Unreimbursed Medical Expenses."

Enforcement Officer Mr. Weight investigated Wife's claim but was unable to resolve whether she was entitled to payment for the alleged unreimbursed medical expenses based on the documentation provided. Consequently, on October 23, 2014, the DRS filed a "contempt" petition against Husband, requesting an evidentiary hearing before the court. According to Wife, the parties appeared before the court on December 3, 2014, at which time a representative from the DRS advised the court the DRS would not enforce Wife's petition regarding her alleged 2013 unreimbursed medical expenses pursuant to its policy that expenses submitted after May 31st will not be enforced, and because Mr. Weight was unavailable to testify. Significantly, the December 3, 2014 hearing transcript is also missing from the certified record.

In a footnote in the "Statement of the Case" section of her appellate

brief, Wife states she ordered all relevant transcripts in this case with her notice of appeal, and if any missing transcripts are necessary to decide Wife's issues on appeal, this Court should remand for transcription of the proceedings without prejudice to Wife. (**See** Wife's Brief at 11-12 n.1). Nevertheless, Wife knew when she filed her first and premature appeal, back in April 2015, that no transcripts were included in the certified record; and this Court dismissed Wife's appeal at docket No. 754 MDA 2015, in part, on that basis. Wife filed the current notice of appeal at docket No. 781 MDA 2017, on May 10, 2017, which included a request for transcripts dated August 8, 2014, December 4, 2014,[7] and February 3, 2015. The certified record before us, however, includes only the February 3, 2015 hearing transcript.

Initially, the record does not indicate whether Wife **paid for** the August or December 2014 hearing transcripts. **See** Pa.R.A.P. 1911(a). Significantly, Wife has had over two years to procure the missing transcripts, which she knew were absent from the certified record since this Court's July 16, 2015 rule to show cause order issued in her earlier 2015 appeal. Wife obviously obtained the February 3, 2015 hearing transcript between the time of her premature appeal and the current appeal, which shows she knew how to get the necessary transcripts, and had plenty of time to ensure they were in the record. Wife, however, simply failed to do so with respect to the 2014 hearing

---

[7] On appeal, Wife contends the hearing took place on December 3, 2014.

transcripts.

Under these circumstances, we cannot fully analyze Wife's claim concerning what inconsistencies, if any, exist between the DRS' policy on the collection of unreimbursed medical expenses and the relevant Rule of Civil Procedure. Therefore, Wife's first issue is waived. **See** Pa.R.A.P. 1911(d) (stating if appellant fails to take action required by these rules and Pennsylvania Rules of Judicial Administration for preparation of transcript, appellate court may take such action as it deems appropriate); **Kessler, supra**; **Smith, supra**.

Additionally, other than reciting the Rule and the DRS' policy, Wife provides no legal authority to support her position that the policy at issue conflicts with Rule 1910.16-6. Wife also fails to explain **how** the policy is inconsistent with Rule 1910.16-6. Wife's first issue is arguably waived for these reasons as well. **See generally Jones v. Jones**, 8778 A.2d 86 (Pa.Super. 2005) (explaining failure to argue and cite to supporting relevant authority constitutes waiver of issue on appeal; arguments that are not developed appropriately are waived); **Bunt v. Pension Mortg. Associates, Inc.**, 666 A.2d 1091 (Pa.Super. 1995) (stating it is appellant's responsibility to establish entitlement to relief by showing that trial court's ruling is erroneous; where appellant presents position without elaboration or citation to case law, this Court can decline to address appellant's bare argument).

Moreover, to the extent we can resolve Wife's first issue on the appeal

based on the limited record before us, Pennsylvania Rule of Civil Procedure 1910.16-6 provides, in pertinent part:

**Rule 1910.16-6. Support Guidelines. Adjustments to the Basic Support Obligation. Allocation of Additional Expenses**

The trier of fact may allocate between the parties the additional expenses identified in subdivisions (a)—(e). If under the facts of the case an order for basic support is not appropriate, the trier of fact may allocate between the parties the additional expenses.

\* \* \*

**(c) Unreimbursed Medical Expenses**. Unreimbursed medical expenses of the obligee or the children shall be allocated between the parties in proportion to their respective net incomes. Notwithstanding the prior sentence, there shall be no apportionment of unreimbursed medical expenses incurred by a party who is not owed a statutory duty of support by the other party. The court may direct that obligor's share be added to his or her basic support obligation, or paid directly to the obligee or to the health care provider.

(1) For purposes of this subdivision, medical expenses are annual unreimbursed medical expenses in excess of $250 per person. Medical expenses include insurance co-payments and deductibles and all expenses incurred for reasonably necessary medical services and supplies, including but not limited to surgical, dental and optical services, and orthodontia. Medical expenses do not include cosmetic, chiropractic, psychiatric, psychological or other services unless specifically directed in the order of court.

*Note*: While cosmetic, chiropractic, psychiatric, psychological or other expenses are not required to be apportioned between the parties, the court may apportion such expenses that it determines to be reasonable and appropriate under the circumstances.

(2)    An annual limitation may be imposed when the burden on the obligor would otherwise be excessive.

(3)    Annual expenses pursuant to this subdivision (c), shall be calculated on a calendar year basis.  In the year in which the initial support order is entered, or in any period in which support is being paid that is less than a full year, the $250 threshold shall be pro-rated.  **Documentation of unreimbursed medical expenses that either party seeks to have allocated between the parties shall be provided to the other party not later than March 31 of the year following the calendar year in which the final bill was received by the party seeking allocation.  For purposes of subsequent enforcement, unreimbursed medical bills need not be submitted to the domestic relations section prior to March 31.**  Allocation of unreimbursed medical expenses for which documentation is not timely provided to the other party shall be within the discretion of the court.

\*    \*    \*

Pa.R.C.P. 1910.16-6(c)(1-3) (emphasis added).

Almost identical to the first sentence of the highlighted language of the Rule, the DRS' policy states: "All unreimbursed medical bills must be provided to the other party not later than March 31 of the year following the calendar year in which the final bill was received by the party seeking allocation." (Collection of Unreimbursed Medical Expenses Policy at 1; R.R. at 473).  The policy continues: "Any unreimbursed medical expense that is not resolved between the parties may be submitted to DRS only between **January 1st and May 31st** for the previous calendar year.  …  Any expense submitted to the DRS **AFTER** May 31st for the previous calendar year…will not be enforced by the DRS."  (*Id.*) (emphasis in original).

- 14 -

We see no inconsistency between the DRS' policy and Rule 1910.16-6(c). To the contrary, Rule 1910.16-6 and the policy both make clear the party seeking payment for unreimbursed medical expenses must submit her expenses **to the obligor** by March 31st of the year following the calendar year in which the final bill was received. Under the DRS policy, any dispute regarding payment of unreimbursed medical expenses must be submitted to the DRS between January 1st and May 31st. The provision that Wife relies on simply provides that, for purposes of enforcement, Wife was not required to submit her petition for enforcement to the DRS **prior to** March 31st. The Rule, however, does not afford Wife an unlimited deadline to submit her petition to the DRS. Rather, the DRS policy sets the deadline on claims submitted to the DRS at May 31st. Read together, the Rule and the policy are consistent as far as deadlines go.

Wife sent Husband a letter detailing her alleged unreimbursed medical expenses on March 10, 2014, but Wife did not file her initial contempt petition until June 19, 2014, in the Court of Common Pleas, or file her claim with the DRS until August 25, 2014. If a representative from the DRS informed the court at the December 3, 2014 hearing that it could not enforce Wife's claim for unreimbursed medical expenses incurred in 2013 (which we cannot verify due to the missing transcript), then that statement is consistent with both the DRS policy as well as Rule 1910.16-6. In any event, notwithstanding Wife's belated filing in the DRS, the court still considered all of Wife's alleged

unreimbursed medical expenses incurred in 2013, and awarded her payment for some of those expenses. Therefore, even if Wife had preserved her first issue for our review, it would merit no relief.

In her second issue on appeal, Wife argues she was required to prove only that she incurred unreimbursed medical expenses in excess of $250.00 to establish Husband's duty to pay the proportionate share of the expenses incurred. Wife asserts she presented documentary evidence at the February 3, 2015 hearing, of all unreimbursed expenses she incurred in 2013 and 2014. Wife claims the court improperly placed the burden on Wife to prove the insurance company did not reimburse her for the amounts she alleged she paid out of pocket. Wife complains the court's denial of her claim for payment of substantial dental treatments was "egregious," where the court initially decided Wife's dental expenses were medically necessary but then denied her claim because Wife provided no follow-up information regarding whether the dental and/or medical insurance companies reimbursed her for those expenses. Wife contends the court completely ignored her testimony/evidence that she took out a line of credit to pay for the substantial dental expenses. Wife insists she also testified and produced an explanation of benefits ("EOB") form, showing the insurance company paid only $966.00 of her $18,500.00 dental expenses incurred in 2013 and 2014.[8] Wife

---

[8] The EOB form Wife submitted pertains only to Wife's dental work in 2013.

concludes the court abused its discretion by awarding Wife only $148.31 for unreimbursed medical expenses, and this Court must reverse. We disagree.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jonathan D. Grine, we conclude Wife's second issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Opinion in Support of Order, filed March 30, 2015, at 4-11) (analyzing Wife's claims for unreimbursed medical expenses submitted for 2013 and 2014, under August 2013 support order; rejecting claims Wife incurred before effective date of support order, claims for which Wife offered no testimony to demonstrate they were reasonably necessary treatment or supplies, and claims for which Wife failed to provide sufficient follow-up information regarding how much, if any, insurance covered or reimbursed her for alleged expenses;[9] court decided Wife submitted $315.00 in eligible unreimbursed

_____

[9] Wife submitted a claim for $6,500.00 she incurred for dental work at Sabatini Dental on June 25, 2013. Wife insists she is entitled to reimbursement on this claim because she obtained a line of credit to pay for this expense, and payment on the line of credit was due on December 9, 2013, after the support order was in effect. Wife also insists she produced an EOB form demonstrating her insurance company paid only $966.00 of the expense. Regarding Wife's latter claim, the billing statement from Sabatini Dental indicates that office billed Wife's medical **and dental** insurance companies. The EOB form Wife provided indicates only what her medical insurance covered. Wife failed to submit sufficient evidence regarding how much, if any, her **dental** insurance covered. In any event, we agree with the trial court that Wife was not entitled to reimbursement for this expense where her dental work was done in June 2013, before the effective date of the support order. **See Hibbitts, supra**.

medical expenses for 2013 and $46.05 in 2014; Wife is responsible for first $119.86 in unreimbursed medical expenses for each year (her pro-rated portion of $250.00 for each year), so Wife is entitled to 76% of remaining $195.14 for 2013 claims, or $148.31 from Husband for total unreimbursed medical expenses).[10] Accordingly, we affirm Wife's second issue based on the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2017

---

[10] We deny Wife's claim for costs of this appeal.

Englert
Muir



IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

SHEILA WEAVER )
    Plaintiff, )
                )   No. 2013-0267-S
                )   PACES No. 584114086
    v.            )
                )
THOMAS BREON, II, )
    Defendant. )

*Attorney for Petitioner:*            *Robert F. Englert, Esq.*
*Attorney for Defendant:*           *Karen G. Muir, Esq.*

## OPINION AND ORDER

On July 10, 2013, Sheila Weaver (hereinafter "Wife") filed a complaint for spousal support against Thomas Breon, II (hereinafter "Husband"). Following a conference on August 21, 2013, an Order for support was entered providing that unreimbursed medical expenses of Wife in excess of $250.00 annually are to be allocated between the parties, with Husband responsible for 76% and Wife responsible for 24%.

On October 23, 2014, the instant Petition for Contempt was filed against Husband. The matter was scheduled for hearing, which ultimately took place on February 3, 2015.

## DISCUSSION

### I. Contempt

Pursuant to 23 Pa.C.S.A. §4345, a person who willfully fails to comply with a support order may be found in contempt. The complaining party has the burden of proving, by a preponderance of the evidence, that the opposing party violated the order in question. *Chrysczanavicz v. Chrysczanavicz*, 796 A.2d 366 (Pa.Super. 2002). In the instant case, Wife alleges Husband is responsible for $18,201.04 in unreimbursed medical expenses for 2013 and 2014. Husband

39

argues Wife did not sufficiently substantiate that she had paid the first $250.00 required by the Order; did not present receipts evidencing the alleged expenses had actually been paid; and did not present any testimony that the treatment and supplies for which she requests reimbursement were medically necessary.

The Court notes that all involved parties, including Domestic Relations, appear to agree this is not a true "contempt" petition in that it seeks to impose sanctions on Husband. Rather, as indicated by Timothy E. Weight, an enforcement officer with the Centre County Court of Common Pleas Domestic Relations Section, this was the only method available to Domestic Relations to bring this matter before the Court for a determination of the amount of unreimbursed medical expenses at issue.

### a. Medical Expenses

Pursuant to 23 Pa.C.S.A. §4324, a court may order an obligor to bear responsibility for a designated percentage of the obligee's "reasonable and necessary health care expenses." Pa.R.C.P. 1910.16-6(c)(1) defines medical expenses as "annual unreimbursed medical expenses in excess of $250 per person," which includes "co-payments and deductibles and all expenses incurred for reasonably necessary medical services and supplies."

### i. Receipts

Husband argues he cannot be held responsible for Wife's medical expenses pursuant to 23 Pa.C.S.A. §4324 and/or Pa.R.C.P. 1910.16-6(c) until Wife demonstrates she has actually paid those expenses. The Court disagrees.

Where "the language of a statute is plain and unambiguous and conveys a clear and definite meaning ... the statute must be given its plain and obvious meaning." *Mohamed v. Com., Dept. of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194 (Pa. 2012). Pa.R.C.P. 1910.16-

2

6(c)(1) defines medical expenses to include "insurance co-payments and deductibles and all expenses *incurred* for reasonably necessary medical services and supplies" (emphasis added). The Rule does not specify the expenses must have been paid by Wife, merely that they were "incurred" by Wife; that is, that she has been charged those amounts and is obligated to pay them to the various providers. The Court therefore finds Wife does not need to provide documentation showing she has paid each expense in full, merely that she has incurred each expense and is obligated to pay them.

### ii. Admissibility of Documentation Provided by Wife

Husband objected to the admission of the documentation of medical expenses provided by Wife at the hearing. Husband argues the documents were hearsay, and should not have been admitted. Although Husband acknowledges Pa.R.C.P. 1029.29(a) provides a mechanism to introduce the items despite their hearsay nature, Husband argues the documents do not fall within this exception as they are unverified and Wife did not provide the requisite notice pursuant to the rule. Wife argues she provided Husband with notice of her intent to use the documents by providing them to him as attachments to her letter of March 10, 2014, and that Husband's Motion to Quash and accompanying letter to the Domestic Relations Section was not sufficient to serve as an objection because neither document made reference to the hearsay nature of the documents.

Although the Court acknowledges the items were hearsay and that Wife did not provide the specific notice of intent required by Pa.R.C.P. 1910.20(a), Wife testified these were expenses she had incurred and documents she had received and, in most cases, had sent payment in response to receiving said document. The Court found Wife's testimony regarding the amounts and accuracy of these documents to be credible. However, the Court notes it has only accepted the

3

content of the documents for which Wife has provided sufficient testimony relating to their qualification as eligible unreimbursed medical expenses. There are several documents for which the Court did not find Wife's testimony to be credible or sufficient to establish the contents as eligible unreimbursed medical expenses, as discussed in detail below.

Further, all parties agree this is not a true contempt petition in which criminal or other sanctions are sought—rather, this is a mechanism for the Domestic Relations Section to bring this matter before the Court for a determination of the unreimbursed medical expenses in question. "Except in the criminal context where hearsay can violate the Confrontation Clause ... the inadmissibility of hearsay is not constitutionally mandated." *Summers v. Summers* 35 A.3d 786, n.4 (Pa.Super. 2012).

### iii.    Expenses in Excess of Threshold

Husband has been ordered to pay 76% of Wife's unreimbursed medical expenses beyond $250.00. In order to demonstrate she is entitled to payment from Husband, Wife must prove by preponderance of the evidence she has incurred more than $250.00 in unreimbursed medical expenses. For the year in which the initial support order is entered, or in any period in which support is being paid that is less than a full calendar year, the threshold should be pro-rated. Pa.R.C.P. 1910.16-6(c)(3).

### a.   2013

The effective date of the support Order is July 10, 2013. There are 175 days from July 10, 2013 through December 31, 2013. By this Court's calculation, the pro-rated portion of the $250.00 threshold for 2013 would be $119.86. The amount of unreimbursed medical expenses for 2013 Wife must demonstrate she incurred before she is eligible for reimbursement from Husband, therefore, is $119.86.

4

Wife alleges she has provided documentation for $19,717.54 in unreimbursed medical expenses, approximately $7,671.69 of which were incurred in 2013. Wife therefore alleges she has met the pro-rated threshold for 2013. The Court agrees Wife has met the threshold amount for 2013, but does not agree with the bulk of her submitted expenses.

Rather, the Court finds Wife has submitted $315.00 in eligible unreimbursed medical expenses for the year 2013. As she is responsible for the first $119.86, she is entitled to reimbursement from Husband of 76% of the remaining $195.14, or reimbursement in the amount of $148.31.

The Court will address each expense for which Wife has provided documentation for the 2013 year in turn.

### i. Eligible and Ineligible Expenses

For purposes of the instant matter, "medical expenses are annual unreimbursed medical expenses" in excess of the threshold amount. "Medical expenses include insurance co-payments and deductibles and all expenses incurred for reasonably necessary medical services and supplies, including but not limited to surgical, dental and optical services, and orthodontia." Pa.R.C.P. 1910.16-6(c)(1). Wife must demonstrate she has met the threshold amount in eligible expenses incurred before she is entitled to reimbursement.

### 1. CVS

Wife testified she received numerous prescription medications throughout the course of 2013. Initially, the Court notes several of these expenses (totaling $70.89) were incurred prior to the effective date of the support Order and therefore, are not eligible medical expenses. Of the remaining $144.80, Wife presented no testimony regarding what conditions these prescriptions were for, nor any other testimony which would indicate these prescriptions were for reasonably

5

necessary treatment or supplies. The Court cannot include these expenses in the total of eligible unreimbursed medical expenses for 2013, as it does not have sufficient information before it to determine whether these were reasonable and necessary treatment or supplies.

### 2. Lock Haven Clinic

Wife provided documentation for an unreimbursed expense of $21.40 incurred from Lock Haven Clinic. Wife testified this visit took place with Dr. Pankaj Metha in June of 2013, but did not testify to the purpose of the visit. As no purpose was testified to for this visit, the Court does not have sufficient information before it to be able to determine this was a reasonably necessary expense and therefore cannot include it in the total of eligible unreimbursed medical expenses for 2013. Further, this visit occurred prior to the effective date of the 2013 Order.

Wife provided additional documentation for an unreimbursed expense of $293.00 from her women's health provider, Dr. Sanchita Yadalla. She testified this was a charge incurred as a result of her annual women's health visit. The Court finds this to be a reasonably necessary expense, and therefore includes it in the total of unreimbursed medical expenses for 2013.

### 3. Lock Haven Medical Center

Wife provided documentation showing she incurred an unreimbursed expense of $15.60 in December of 2013 during a visit to the Lock Haven Medical Clinic. Wife, however, was unable to indicate the purpose of the visit. As no purpose was stated for this visit, the Court does not have sufficient information before it to be able to determine this was a reasonably necessary expense and cannot include it in the total of unreimbursed medical expenses for 2013.

### 4. Mount Nittany Physicians Group

Wife testified she visited Dr. Christopher Hester of the Mount Nittany Physician Group for treatment related to a sinus infection, and incurred an unreimbursed charge of $22.00. The Court

6

finds this a reasonably necessary expenses and therefore includes it in the total of unreimbursed medical expenses for 2013.

Wife also visited Dr. Christopher Yingling of the Mount Nittany Physician Group in December of 2013 and incurred an unreimbursed charge of $103.20. However, as no testimony was provided as to the nature of the visit, the Court does not have sufficient information before it to determine this was a reasonably necessary expense and therefore cannot include it in the total of unreimbursed medical expenses for 2013.

### 5. Pittsburgh Ear Associates

Wife also provided documentation for a visit to Pittsburgh Ear Associates, during which she incurred an unreimbursed charge of $14.60. However, Wife did not testify to the purpose of this visit. The Court does not, therefore, have sufficient information before it to determine whether or not this was a reasonably necessary expense and therefore cannot include it in the total of unreimbursed medical expenses for 2013.

### 6. Sabatini Dental

Wife testified she has pain in her jaw and other issues with her mouth which cause her issues with her chewing, headaches, and her ears. She received an orthotic from Sabatini Dental which holds her jaw up and, in turn, helps to relieve the symptoms she was experiencing.

Wife presented a letter from Sabitini Dental as well as Care Credit Card statements showing she has paid a total of $6,500.00 in 2013. However, the documentation Wife presented from Sabatini Dental states, in relevant part, "we are billing both Sheila's dental and medical insurance for these costs. We do not know what they will pay. Sheila has paid $6,555.00 to date." While the Court believes this was a medically necessary expense, based on Wife's testimony, the Court cannot determine whether this is truly an "unreimbursed" medical expense,

7

as Wife has provided no follow-up information regarding what, if anything, her dental and medical insurance reimbursed her for this expense.

Additionally, the $6,5000.00 charge was incurred on June 25, 2013. The effective date of the 2013 support Order was July 10, 2013. This charge was incurred prior to the effective date of the 2013 support Order. Husband cannot be held responsible for medical expenses incurred by Wife prior to the effective date of the Order. These expenses, therefore, cannot be included in the total of unreimbursed medical expenses for 2013.

### 7. WalMart Vision Center

Wife testified she requires eyeglasses. She submitted a receipt from the Walmart Vision Center for charges of $209.00 for frames, lenses, and "scratchguard." However, Wife did not indicate to the Court whether her insurance covered any part of this fee or provided her any reimbursement for this fee. The Court does not have sufficient information before it to determine whether this is truly an "unreimbursed medical expense" and therefore cannot include it in the total of medical expenses for 2013.

### 8. Benner Chiropractic

Wife also presented documentation from Benner Pike Chiropractic, indicating she had incurred charges of $277.20. However, the documentation provided does not give legible dates for the visits. Further, Wife did not indicate to the Court that these visits were for any medical issues or other purposes. Although this Court may, in its discretion, allocate expenses which are not specifically contained in the Order, the Court does not have sufficient information before it to determine either the actual amount incurred between July 10, 2013 and December 31, 2013, or whether this amount was a reasonably necessary expense and therefore cannot include in in the medical expenses for 2013.

8

### b. 2014

Wife received support under the July 10, 2013 Order until June 25, 2014, the effective date of the current support Order. Again, there are 175 days from January 1, 2014 through June 24, 2014, so the pro-rated threshold amount for 2014 would also be $119.86. Wife alleges she has provided documentation for $19,717.54 in unreimbursed medical expenses, approximately $12,046.05 of which were incurred in 2013. Wife therefore alleges she has met the pro-rated threshold for 2014. The Court disagrees. The Court, as discussed further below, finds Wife has incurred $46.05 in eligible expenses through June 24, 2014. This is less than the threshold of $119.86 which Wife must meet for the period from January 1, 2014 through June 24, 2014. The Court will address each expense for which Wife has provided documentation for the 2014 year in turn.

#### i. Eligible and Ineligible Expenses

Wife must demonstrate she has met the threshold amount in eligible expenses incurred before she is entitled to reimbursement.

#### a. Cochlear

Wife provided documentation for an expense of $22.85 for a "Dry & Store Dry-Brik Desiccant" which she received from Cochlear Americas. Wife indicated to the Court she did not receive any insurance reimbursement for this expense.

Wife testified this device was necessary to store her hearing aids. The Court finds this to be a reasonably necessary medical expense. Again, although the support Order does not specifically provide for audiological expenses, the Court may apportion such other expenses it determines to be reasonable and appropriate under the circumstances. Wife testified she cannot hear at all out of her left hear without the use of a bone-anchored hearing aid (BAHA), and has difficulty

9

hearing out of her right ear without the use of a hearing aid. Wife uses the Dry Brik to store her audiological devices each night to prevent moisture buildup. The Court finds these supplies to be reasonably and appropriate, considering Wife's hearing loss.

### b. Geisinger

Wife also testified she attended an appointment with her dermatologist at Geisinger Health System for "something" on her skin, and her dermatologist wished to determine whether it was cancerous. Wife presented documentation indicating she had incurred an expense of $23.20 which was not covered by insurance. The Court finds this to be a reasonably necessary medical expense.

### c. Sabatini Dental

As noted above, Wife presented a Care Credit Card statement which indicated she has paid Sabatini Dental an additional $12,000.00 for visits beginning in January of 2014. However, again, the documentation provided from Sabatini Dental states, in relevant part, "we are billing both Sheila's dental and medical insurance for these costs. We do not know what they will pay. Sheila has paid $6,555.00 to date." While the Court believes, based on Wife's testimony, this treatment was medically necessary, the Court cannot determine whether this is truly an "unreimbursed" medical expense, as Wife has provided no follow-up information regarding what, if anything, her dental and medical insurance reimbursed her for this expense.

Based on the foregoing discussion, the Court determines Wife has submitted documentation for $315.00 in eligible unreimbursed medical expenses for the year 2013 and documentation for $46.05 for the year of 2014. As she is responsible for the first $119.86 in unreimbursed medical expenses for each year, she is entitled to reimbursement of $148.31 from Husband, or 76% of the remaining $195.14.

10

The Court, therefore, enters the following Order:

## ORDER

AND NOW, this 27th day of March, 2015, the Court having found Wife has incurred a total of $315.00 in eligible unreimbursed medical expenses for the year 2013 and $46.05 for the year 2014, based on the testimony and documentation provided to the Court, the Court enters the following Order:

1.    Wife is entitled to reimbursement from Husband in the amount of $148.31;

2.    Husband shall pay this amount directly to Wife via check within ten (10) days of the date of this Order.

BY THE COURT:

Jonathan D. Grine, Judge

11